UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GENERAL CASUALTY COMPANY OF WISCONSIN,<br><br>                    Plaintiff,<br><br>   vs.<br><br>NELSON ENGINEERING CONSULTING, LLC,<br><br>                    Defendant. | CIV. 13-4075-KES<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

Plaintiff, General Casualty Company of Wisconsin, brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), seeking a declaration that it has no duty to defend or indemnify its insured, defendant Nelson Engineering Consulting, LLC (Nelson Engineering).[1] General Casualty moves for summary judgment. Nelson Engineering resists that motion. For the following reasons, the court denies the motion.

## BACKGROUND

The facts, viewed in the light most favorable to the nonmoving party, Nelson Engineering, are as follows:

In 2007, South Dakota Oilseed Processors, LLC (SDOP), entered into a contract with Nelson Engineering Construction, LLC (Nelson Construction). According to the contract, Nelson Construction would serve as the general

---

[1] Subsequent to the commencement of this litigation, Nelson Engineering Consulting, LLC merged with Nelson Engineering Inc. Nelson Engineering Inc. was the surviving entity. *See* Docket 8 at 1-2.

contractor on a construction project to build a seed oil processing facility in St. Lawrence, South Dakota. Docket 1-1 at 28-43. SDOP alleges that either Nelson Construction or Nelson Engineering subsequently retained E&I Specialists, Inc., as the subcontractor responsible for performing all necessary electrical work on the project. *Id.* at 3. The contract with E&I was signed by Paul Zweifel on behalf of Nelson Construction. *Id.* at 45-48. That contract references a proposal submitted by E&I to Paul Zweifel at Nelson Engineering. *Id.* at 45 (agreement between E&I and Nelson Construction stating that E&I would "[p]rovide material and labor for the above grade electrical piping and wiring proposed in E&I proposal number MSDOP070308-3 Rev 2"); *Id.* at 50 (E&I proposal MSDOP070308-3 submitted to Paul Zweifel at Nelson Engineering).

SDOP alleges that Nelson Construction and/or Nelson Engineering oversaw the construction of the facility, which was completed in December 2008. *Id.* at 4. Production began in January 2009. *Id.* Thereafter, SDOP alleges it experienced ongoing problems with the electrical service, including numerous shorts. *Id.* On August 20, 2009, an arcing event occurred and caused damage to the facility. *Id.* As a result, SDOP alleges production was interrupted, it lost revenue, and it was forced to begin bankruptcy proceedings. *Id.* at 4-5.

E&I filed suit against SDOP in circuit court in Hand County, South Dakota. *Id.* at 2. SDOP filed an answer, counterclaim, and crossclaim. *Id.* In that pleading, SDOP also brought six third-party claims against Nelson Engineering alleging breach of contract, breach of express and implied warranty, negligence, negligent misrepresentation, intentional misrepresentation, and fraud. *Id.* at 13-18. Each claim is premised on the contention that Nelson Engineering, and not Nelson

Construction, was the true party to the general contractor agreement. The progress of this underlying action is unclear from the parties' submissions to this court. General Casualty has provided Nelson Engineering with a defense to the crossclaims, under a reservation of rights, in the underlying action.

General Casualty issued a commercial general liability policy to Nelson Engineering, which was in effect from April 25, 2009, to April 25, 2010. That policy contained a number of exclusions, including exclusions for expected or intended injury and professional services. The policy also limited coverage to "occurrences" as defined in the policy. On July 10, 2013, General Casualty filed this declaratory judgment action requesting that the court declare that General Casualty's policy issued to Nelson Engineering does not provide coverage in the underlying action and that General Casualty is not obligated to defend or indemnify Nelson Engineering in that action. Docket 1 at 9-10. General Casualty now moves for summary judgment.[2] Docket 21.

---

[2] Nelson Engineering requests oral argument on the motion for summary judgment pursuant to Local Rule 7.1. Docket 25. Because the court can resolve the motion without oral argument, that request is denied. Nelson Engineering states at one point that "General Casualty's Motion should be denied and an order entered declaring that under the terms of the insurance policy General Casualty has a duty to defend and indemnify [Nelson Engineering]." Docket 28 at 1. The court does not construe that sentence, standing alone, as a motion for summary judgment, nor would such a statement comply with Local Rule 56.1.

**LEGAL STANDARD**

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Construction of "provisions in an insurance policy that does not require an inquiry into the parties' intentions or the consideration of outside and conflicting evidence properly may be resolved by summary judgment." 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2730.1 (3d ed.) [hereinafter Wright and Miller]; *see also Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1392 (8th Cir. 1996) ("Where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability

depends solely upon a construction of the policy, the question presented is one of law . . . ."). Nonetheless, "[s]ummary judgment frequently is denied in [actions involving insurance agreements] because issues of fact are present concerning whether the injury or activity involved is within the scope of the insurance policy—questions requiring the construction of the policy in light of the parties' understanding and the customs in the insurance industry." 10B Wright and Miller § 2730.1.

## DISCUSSION

### I. Conflict of Laws

"A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Id.*

In determining whether a conflict exists, the court must ascertain which state's law may apply. Under South Dakota law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." SDCL 53-1-4. "Generally, unless the parties agree otherwise, an insurance contract is 'made' at the place where the last act necessary to its completion is accomplished." *Great West Cas. Co. v. Hovaldt*, 603 N.W.2d 198, 201 (S.D. 1999). The insurance contract between General Casualty and Nelson Engineering does not specify a place of performance, nor does it contain a choice-of-law provision or any indication of where it was made. *See* Docket 24-1.

Nelson Engineering is a South Dakota entity. The insurance agreement, which is attached as Exhibit A to the third-party complaint, does not contain any signatures, but appears to have been prepared by a branch of General Casualty located in Iowa. Docket 24-1 at 3. Additionally, the independent agent listed on the insurance contract was located in Iowa. *Id.* It appears that the contract was made in either Iowa or South Dakota, wherever the last act took place. General Casualty asserts that Wisconsin law may apply because General Casualty is located in Wisconsin, although it is unclear on what basis or authority General Casualty reaches that conclusion.

General Casualty contends there is no difference between South Dakota and Wisconsin law, so the court does not need to undertake a conflict-of-law analysis. Docket 22 at 5-6. Nelson Engineering responds that there is a conflict because South Dakota law allows courts to consider extrinsic evidence in determining whether a duty to defend or indemnify exists, but Wisconsin does not allow courts to consider extrinsic evidence. Docket 28 at 3-4. General Casualty replies that in instances where an insurer has provided a defense to its insured, Wisconsin law allows courts to use extrinsic evidence to determine coverage. Docket 29 at 4-5 (citing *Olson v. Farrar*, 809 N.W.2d 1, 8-9 (Wis. 2012)). Neither party addresses Iowa law.

There does not appear to be a conflict of laws in this case. All three states have similar laws regarding an insurer's duties to defend and indemnify.[3] While

---

[3] *Compare Demaray v. De Smet Farm Mut. Ins. Co.*, 801 N.W.2d 284, 287 (S.D. 2011) (discussing the duties to defend and indemnify*) with United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 656-57 (Iowa 2002) (applying similar rules) *and Olson*, 809 N.W.2d at 7-8 (same).

Wisconsin and South Dakota differ on when a court may consider extrinsic evidence, the differences would not be meaningful in this case.[4] Additionally, South Dakota, Wisconsin, and Iowa would not enforce the pertinent contract provisions in a manner that would change the outcome of this case. Consequently, there is no conflict of law. This court will therefore apply the law of the forum state, South Dakota.[5] *See Oakdale Mall Assocs. v. Cincinnati Ins. Co.*, 702 F.3d 1119, 1122 (8th Cir. 2013); 19 Wright and Miller § 4506 ("[M]any circuits have found that if the laws of the states do not conflict, a choice-of-law analysis is rendered unnecessary and the federal court may use the law of the forum state.").

## II.   Duty to Defend

Under South Dakota law, to ascertain whether an insurer has a duty to defend, courts look to the pleadings in the action against the insured. *Hawkeye-Security*, 366 N.W.2d at 491-92. "An insurer's duty to defend is much broader than its duty to provide coverage. The duty to defend need only arguably appear on

---

[4] In this case, because it is clear from the face of the pleadings that an alleged claim falls within policy coverage, extrinsic evidence may not be considered under South Dakota law. *See Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489, 491-92 (S.D. 1985). Nelson Engineering's reliance on *Demaray*'s statement that a court looks to the complaint and other evidence of record is misplaced because that statement traces back to the South Dakota Supreme Court's more complete discussion in *Hawkeye-Security*. *See Demaray*, 801 N.W.2d at 287 (citing *State Farm Fire & Cas. Co. v. Harbert*, 741 N.W.2d 228, 234 (S.D. 2007), which quotes *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908, 912 (S.D. 1992), which quotes *Hawkeye-Security*, 366 N.W.2d at 491-92). Wisconsin only allows consideration of extrinsic evidence at a coverage trial. *Olson*, 809 N.W.2d at 8. Thus, under both South Dakota and Wisconsin law, the court would not consider extrinsic evidence in this case.

[5] Nelson Engineering argues for the application of South Dakota law due to the alleged conflict. General Casualty contends there is no conflict. Thus, although the parties disagree on whether a conflict exists, both parties ultimately argue for the application of South Dakota law.

the face of the pleadings. Assuming the allegations in the complaint are true, if an alleged claim falls within policy coverage, a duty to defend exists." *Demaray*, 801 N.W.2d at 287 (internal citations omitted).

" 'The existence of the rights and obligations of parties to an insurance contract are determined by the language of the contract which must be construed according to the plain meaning of its terms.' " *Harbert*, 741 N.W.2d at 234 (quoting *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592, 598-99 (S.D. 2001)). "The insurer bears the burden of showing that it has no duty to defend its insured. To satisfy this burden, the insurer must show that the claim *clearly* falls outside of policy coverage." *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 638 (S.D. 1995) (emphasis in original) (internal citation and quotations omitted). "If just one claim falls within the policy coverage, the insurer must defend 'even though the pleadings are ambiguous or reveal other claims not covered in the policy . . . .' " *Biegler*, 621 N.W.2d at 599 (quoting *Hawkeye-Security*, 366 N.W.2d at 491-92). "Any doubts should be resolved in favor of the insureds." *Demaray*, 801 N.W.2d at 287.

The third-party complaint alleges that Nelson Engineering is the true party to the general contractor agreement nominally between Nelson Construction and SDOP. Based on that allegation, SDOP brought the following claims against Nelson Engineering:

(1) Breach of contract for breaching the warranty that it would use the care and skill ordinarily used in its field;

(2) Breach of express and implied warranties in the installation of the electrical system for an alleged failure to provide proper

      workmanship, services, supervision, and oversight, for furnishing a product that did not conform with the specifications in the agreement, for failing to correct deficiencies, and for a failure to ensure that E&I used ordinary care;

(3) Negligence based on an alleged breach of a duty to perform and/or supervise the electrical installation in a safe and workmanlike manner;

(4) Negligent misrepresentation based on an alleged representation that the quality of the work performed by E&I was in compliance with the contract and industry standards and was free of defects when Nelson Engineering either knew or should have known that such a representation was not true;

(5) Intentional misrepresentation based on the same facts; and

(6) Fraud based on the allegation that such misrepresentation was recklessly or knowingly made with the intent to deceive SDOP and induce SDOP to pay for and accept the work performed.

Docket 24-2 at 13-18.

    The terms of the insurance policy in effect at the time are undisputed. *See* Docket 27 at 1-2 (Nelson Engineering's response to General Casualty's statement of undisputed material facts). Unless excluded, the insurance contract provides coverage for "property damage" caused by an "occurrence," as the contract defines those terms. *See* Docket 23 at 1-2. With regard to the breach of contract, breach of express and implied warranty, and negligence claims, General Casualty's only

argument is that the professional services exclusion applies and therefore it has no duty to defend.

### A. Professional Services

The professional services exclusion states that "[t]his insurance does not apply to . . . 'property damage' . . . due to rendering or failure to render any professional service." Docket 24-1 at 50 & 53. The policy further states that the professional services exclusion includes but is not limited to "[p]reparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; [and] supervisory, inspection or engineering services[.]" *Id.* at 53.

In analyzing a professional liability policy, the South Dakota Supreme Court defined professional acts as "those entailing the performance of a vocation, calling, or occupation requiring learning and intellectual skill." *St. Paul Fire & Marine Ins. Co. v. Engelmann*, 639 N.W.2d 192, 197 (S.D. 2002) (addressing whether sexual assault of a patient was covered by a professional liability policy). In *Kirkham, Michael & Associates, Inc. v. Travelers Indemnity Co.*, 361 F. Supp. 189 (D.S.D. 1973), the district court addressed a contract in which the insured agreed "to design, prepare detailed plans and specifications for, conduct bidding, detailedly to oversee and inspect construction, and to make a final inspection of" a construction project. *Id.* at 192. Without any elaboration, the court found the exclusion[6] "of

---

[6] The policy contained an exclusion for "property damage arising out of any professional services performed by or for the named insured, including (1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (2) supervisory, inspection or engineering services." *Kirkham, Michael & Associates*, 361 F. Supp. at 191.

sufficient breadth to exempt the defendants from the exposure KMA seeks to burden them with." *Id.* at 193-94.

Both parties discuss two Wisconsin cases addressing professional services exclusions. *See* Docket 22 at 7-9 (discussing *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 87 (Wis. 2004) and *Leverence v. U.S. Fid. & Guar.*, 462 N.W.2d 218, 227 (Wis. Ct. App. 1990)); Docket 28 at 10 (same).[7] General Casualty also points the court to *Hartford Casualty Insurance Co. v. Benchmark, Inc./Taylor Associates., Inc.*, No. C 98-0021 MJM, 1999 WL 33656863 (N.D. Iowa July 19, 1999). There, the court adopted "an expansive definition" of professional service:

> The term is not limited to services performed by persons who must be licensed by a governmental authority in order to practice their professions. Rather, it refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or manual in nature.

Id. at *3 (quotation omitted). Based on the professional services exclusion, the Iowa court held that the insurers had no duty to defend or indemnify their insured.

---

[7] In *Leverence*, the court of appeals addressed a situation in which the insured, Tri-State Homes, Inc., designed, built, and marketed prefabricated homes. The homes retained excessive moisture. The insurers argued that because the design of the homes involved special knowledge, labor, or skill, there was no coverage due to a professional services exclusion. The court held that the professional services exclusion did not bar coverage because the claims arose out of the manufacture of a defective product rather than malpractice in rendering a design. *Leverence*, 462 N.W.2d at 226. The court stated that the proper focus is on the end product, not whether any particular step involved specialized or intellectual skill. *Id.* at 227.

In *American Girl* the insured provided flawed professional soil engineering services. *American Girl*, 673 N.W.2d at 87. The Wisconsin Supreme Court distinguished *Leverence* by stating, "[t]his case does not pose the analytical dilemma that troubled the court in *Leverence*; there, the professional services inextricably combined with the manufacturing services to produce the claimed injury." *Id.*

The parties dispute the nature of the claims brought against Nelson Engineering, and more fundamentally, Nelson Engineering's role in the construction project. General Casualty maintains that "[t]he allegations in the Suit Papers supporting the breach of contract, breach of express and implied warranty, and negligence causes of action clearly reference [Nelson Engineering's] provision, or failure to provide, professional services[.]" Docket 22 at 10. General Casualty argues that SDOP only alleges supervisory failures against Nelson Construction, so at most Nelson Engineering's liability is limited to similar supervisory failures. Docket 29 at 7-8. Nelson Engineering responds that "while there are certainly allegations within the Suit Papers that are directed towards [Nelson Engineering's] obligations to supervise and inspect E&I's work, those are not the only allegations contained in the Suit Papers nor in the contractual documents between SDOP and [Nelson Construction]." Docket 28 at 7.

SDOP's third-party claims include allegations that Nelson Construction and Nelson Engineering failed to ensure a clean and safe work environment and failed to ensure that the electrical installation was performed properly. *See* Docket 1-1 at 7. SDOP also alleges that Nelson Construction and Nelson Engineering failed to provide proper workmanship and that they delivered a product not in conformity with the general contractor agreement. *Id.* at 8-9. Thus, the pleadings allege claims relating to Nelson Engineering's duty to provide services of a physical or manual nature rather than being limited to supervisory, inspection, design, or engineering services.

General Casualty also argues that "[t]he Suit Papers do not allege that [Nelson Engineering] was responsible for performing, or that it performed, actual

construction work on the Project." Docket 29 at 7. But the policy does not limit coverage to actual construction work only. Rather, it excludes coverage for professional services. If Nelson Engineering is the true party to the general contractor agreement,[8] it may have had obligations relating to the construction of the plant that did not involve specialized skill or were not primarily intellectual, and the end product of the agreement was not merely the design of the seed oil plant but the completed plant itself. *See, e.g., Leverence*, 462 N.W.2d at 227 (focusing on the end product of the agreement rather than each step in the process).

Taking the allegations against Nelson Engineering as true, those allegations could involve physical, manual, or nonspecialized services rather than a failure in a supervisory, inspection, design, or engineering role. Thus, SDOP has stated a claim against Nelson Engineering that falls outside the scope of the professional services exclusion. General Casualty has not met its burden at this stage to prove "that the claim *clearly* falls outside of policy coverage," *Wertz*, 540 N.W.2d at 638, and therefore has not shown that it is entitled to summary judgment.

B.  **Remaining Claims on the Duty to Defend**

General Casualty does not contend that its arguments based on the "occurrence" limitation and the expected or intended injury exclusion apply to the first three claims. Because General Casualty has a duty to defend at least one claim, the court need not address whether General Casualty has a duty to defend Nelson Engineering against the negligent misrepresentation, intentional

---

[8] In determining a duty to defend, the court assumes all allegations in the complaint to be true. *Demaray*, 801 N.W.2d at 287. Additionally, General Casualty has the burden of proof at this stage of the litigation. *Wertz*, 540 N.W.2d at 638.

misrepresentation, and fraud claims. *See Biegler*, 621 N.W.2d at 599 (stating that an insurer has a duty to defend a suit when it has a duty to defend on one claim even if other claims fall outside of its duty to defend).

### III.    Duty to Indemnify

General Casualty also moves for summary judgment declaring that it has no duty to indemnify Nelson Engineering. *See* Docket 21 at 1 (moving "for summary judgment declaring that [General Casualty] has no duty to defend or indemnify"). The duty to indemnify is distinct from the duty to defend. *Hawkeye-Security Ins. Co.*, 366 N.W.2d at 490. General Casualty contends that because it does not have a duty to defend, there can be no duty to indemnify. Because the court found that General Casualty is not entitled to summary judgment on its duty to defend, General Casualty has not shown it is entitled to summary judgment on its duty to indemnify.

## CONCLUSION

Taking the allegations in the state-court third-party complaint as true, they are broad enough to encompass some acts that are not excluded from coverage under the professional services exclusion in the insurance policy. Because there may be coverage under the policy for Nelson Engineering with respect to SDOP's breach of contract, breach of warranty, and negligence claims, General Casualty has not shown that all claims against Nelson Engineering clearly fall outside the policy. Material issues of fact remain with regard to resolution of the duty to indemnify. Accordingly, it is

ORDERED that General Casualty Company of Wisconsin's motion for summary judgment (Docket 21) is denied.

Dated February 13, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE